138 P.2d 522

**MITCHELL et al. v. JONES.**

No. 4752.

Supreme Court of New Mexico.

May 21, 1943.

Rehearing Denied June 30, 1943.

Frazier & Quantius, of Roswell, for appellants.

Norman R. Reese and G. L. Reese, Sr., both of Roswell, for appellee.

SADLER, Justice.

The defendant (appellee here) recovered judgment below on a cross complaint filed against plaintiffs, who sought recovery from defendant on a promissory note representing the balance of the purchase price of a bull sold for breeding purposes. Plaintiffs sold defendant the bull on May 15, 1939, for the agreed price of $85, of which $50 was paid in cash and the balance evidenced by defendant's promissory note due six months after date.

The plaintiffs represented and warranted to defendant at the time of the sale, as found by the trial court, that "the bull so sold was a good bull, capable of doing the work which the defendant desired, to-wit: the production of calves by breeding with the defendant's cows". The defendant was then the owner of nineteen cows capable of breeding and producing calves and the defendant purchased the bull for the purpose of breeding him to the cows and obtaining a calf crop in due season. The bull was placed with defendant's cows when purchased and remained with them until September, 1940, during all of which time he proved to be sterile and impotent and thus incapable of breeding or producing calves.

In the month of November, 1939, following the maturity of the defendant's note, and when the plaintiffs had made demand upon defendant for payment of the same, the defendant notified plaintiffs that the bull was impotent and nonproductive and demanded that plaintiffs make good their warranty. This they refused to do. The defendant lost a calf crop for one season by reason of the breach of warranty and was awarded damages on his cross complaint in the sum of $193.20. Damages had been claimed in the sum of $200. The market value of the animal as an impotent bull was found to be $56.80, thus resulting in the awarding of damages in the sum indicated. This determination of the issues resulted also in a judgment that the plaintiffs take nothing in their action for recovery on the $35 note. This appeal followed.

While several claims of error are presented and argued, we think all of them become unimportant save as resolved by the conclusions to be announced. The plaintiffs assign error on the court's Finding No. 2 setting forth the terms of the warranty. This finding, although heretofore stated in substance, reads as follows: "That the plaintiffs at the time of the purchase of the said bull by the defendant, represented and warranted to the defendant that the bull so sold was a good bull, capable of doing the work which the defendant desired, to-wit: the production of calves by breeding with defendant's cows."

The plaintiffs excepted to this finding for the reason, among others, "that said finding of fact does not state the warranty given by plaintiffs to defendant" etc. They proposed and the court refused a finding, as follows: "That plaintiffs warranted the bull to be a breeder, and agreed that if the bull did not reproduce through some fault of the bull's it would be replaced with one that did; that no other warranty was made."

In his cross complaint, the defendant alleged: "That prior to the sale of said bull, the plaintiffs, a co-partnership, by Joe Mitchell, one of the partners, represented and warranted that the bull was a good bull and capable of doing the work which the defendant desired, to-wit: the production of calves by breeding with defendants cows, and in case the bull did prove non-productive, plaintiffs would furnish defendant with another bull which would give satisfactory service."

The defendant testified in his own behalf in support of this allegation of his cross complaint as follows: "He guaranteed the bull to give satisfaction and sold him to me for a breeding bull, and any time the bull wasn't able to give satisfaction he said to let him know and he would come and get the bull and he would bring me another bull and it would not cost me a penny; that was Mr. Mitchell's guarantee."

█ In view of the fact that the defendant as cross complainant himself both

pleaded and testified that the warranty was substantially in the form proposed by the plaintiff as a finding as set out hereinabove, we think it was error for the court to refuse so to find. We will then accept it as an established fact in the case that the warranty was as both pleaded and related in evidence by the defendant himself. Thus viewed, the warranty was that the bull was a good breeder and capable of producing calves by breeding him to the defendant's cows and that, if he was unable to give satisfaction in this respect, the plaintiffs, upon notice, would replace him with another bull capable of rendering such service at no additional cost to the defendant.

We may lay aside as immaterial the trial court's finding that the plaintiffs failed and refused to make good their warranty after notice in view of the fact that such notice was not given by defendant until subsequent to November 15, 1939, and then only coincident with demand on him for payment of the note representing the balance of the purchase price of the bull. The bull had then been running in the pasture with defendant's cows for more than six months. There had been abundant opportunity on defendant's part to ascertain that the bull was sterile. Indeed, according to his own testimony, he had ascertained this fact. He testified that summer is the breeding season and it was undisputed that the bull was with his cows throughout the summer of 1939. Likewise, and as defendant himself stated, an experienced cowman "should know every eighteen days, or twenty-one" after a bull is placed with cows whether they are with calf. He testified: "I have watched the bull carefully and he couldn't do nothing. * * * That is why I knew the bull couldn't get a calf. I waited on him, and I should have made a report on him."

Notwithstanding this knowledge that the bull was not performing as promised, the defendant delayed notifying the plaintiffs until shortly after November 15th when the 1939 breeding season had passed and then only when he was called upon to pay the note for balance of the purchase price. He excuses the delay by stating that he was giving the bull a chance to prove himself. Unfortunately, however, he delayed so long that it was no longer possible for the plaintiffs to save themselves by supplying another bull in fulfillment of their warranty. The 1939 breeding season had passed.

Viewed in either aspect, it seems the defendant must fail in his effort to sustain the judgment recovered. If considered solely from the standpoint of an arbitrary refusal on plaintiff's part to fulfill the warranty made, the light in which defendant has presented the matter to us, such refusal occurred at a time when fulfillment would not have produced a calf crop in 1940. If viewed from the standpoint of a breach taking place while there yet was time for breeding to produce a 1940 calf crop, the defendant well knew according to his own admissions of the impotency of the bull in time to have sought the services of another and thus

have mitigated the damages suffered by loss of a calf crop in 1940. Indeed, there is grave doubt whether such damages are not too remote and speculative to become the basis of recovery, 24 R.C.L. § 546 "Sales"; Wiggins v. Jackson, 31 Okl. 292, 121 P. 662, 43 L.R.A.,N.S., 153, a matter which we leave undecided.

 It is well settled that a party must use reasonable diligence to mitigate the damages about to be suffered either from tort or breach of contract. 15 Am.Jur. 420, § 27 "Damages"; 25 C.J.S., Damages, p. 502, § 34; Pauls Valley Milling Co. v. Gabbert, 182 Okl. 500, 78 P.2d 685, 117 A.L.R. 466. This general rule is applied to actions for breach of warranty. 24 R.C.L. 268, § 547 "Sales". While it is true, as counsel for defendant states, the plaintiffs tendered no plea of mitigation of damages in answer to the cross complaint, nevertheless, the issue was litigated and, by appropriate proposed findings and conclusions, the matter was called to the attention of the trial court. In such circumstances, the pleadings will be deemed amended to conform to the proof. Nikolich v. Slovenska Nardona Podporna Jednota, 33 N.M. 64, 260 P. 849. In denying the findings and conclusions touching this issue as proposed by the plaintiffs, the trial court evidently took the view that the case was not one for mitigation of damages. Such a view is erroneous as indicated by the authorities heretofore cited.

The judgment under review will be reversed and the cause remanded to the district court with instructions to such court to set aside its judgment and for further proceedings not inconsistent with the views herein expressed.

It is so ordered.

MABRY, BICKLEY, and BRICE, JJ. concur.